# United States Court of Appeals
# for the Fifth Circuit

––––––––––––

No. 23-60154
Summary Calendar

––––––––––––

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2023

Lyle W. Cayce
Clerk

Ray C. Turnage, *on behalf of themselves and all others similarly situated*; Reverend D. Franklin Browne, *on behalf of themselves and all others similarly situated*; Dennis D. Henderson, *on behalf of themselves and all others similarly situated*; Carlos Wilson, *on behalf of themselves and all others similarly situated*; Fred Burns, *on behalf of themselves and all others similarly situated*; Charles Bartley, *on behalf of themselves and all others similarly situated*; Clarence Magee, *on behalf of themselves and all others similarly situated*; Linda Patrick-Crafton, *on behalf of themselves and all others similarly situated*; Barbara Young, *on behalf of themselves and all others similarly situated*; Juanita J. Griggs, *on behalf of themselves and all others similarly situated*; Chernise Seaphus, *on behalf of themselves and all others similarly situated*; Mount Carmel Baptist Church; Pinebelt Community Services, Incorporated; Hall-Fairley Mortuary; Deborah Delgado,

*Plaintiffs—Appellants,*

*versus*

Mississippi Power Company,

*Defendant—Appellee.*

––––––––––––––––––––––––––––––

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CV-818

––––––––––––––––––––––––––––––

Before Jones, Smith, and Dennis, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs-Appellants, on behalf of themselves and a putative class of all Mississippi Power Company ("MPC") ratepayers, filed this 42 U.S.C. § 1983 class action against Defendant-Appellee MPC. The Plaintiffs allege that MPC used an incorrect interest rate when calculating a Mississippi Supreme Court-ordered refund, leading to millions of dollars of damages in the aggregate. The district court granted the Defendant's Motion to Dismiss, finding that the Plaintiffs had failed to plead sufficient facts demonstrating that MPC was a state actor for the purposes of § 1983, and that Mississippi law had not created a protectable property interest in a specific utility rate. We AFFIRM.

## I.    Facts and Procedural Background

The origins of this dispute are more than a decade old, encompassing proceedings before the Mississippi Public Service Commission ("the Commission"), the Mississippi Supreme Court, the U.S. District Court for the Southern District of Mississippi, and our court. For the sake of brevity, we only recount the facts most relevant to our resolution of the present appeal.

On March 5, 2013, the Commission unlawfully authorized MPC to raise its customers' utility rates. In 2015, the Mississippi Supreme Court invalidated the rate increase, ordering MPC to refund to its customers the money it collected from the increased rate. *Miss. Power Co., Inc. v. Miss. Pub. Serv. Comm'n*, 168 So. 3d 905, 916 (Miss. 2015). MPC submitted a proposed refund plan to the Commission on July 21, 2015, which the Commission

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

approved on August 6, 2015. Relevant to this appeal, the refund plan provided for repayment of the overpaid bills with interest, calculated at the company's "after tax WACC (weighted average cost of capital) rate of 9.5% over the entire refund period." MPC finished issuing the refunds on December 4, 2015.

On August 13, 2016, the Plaintiffs' commissioned economist issued a report comparing the interest they received under the refund plan—the after-tax WACC rate of 9.5% over the refund period—to the interest potentially guaranteed by Mississippi statute. The economist calculated that MPC's application of the 9.5% WACC rate, rather than the "statutory rate" of 8%, resulted in an underpayment of over $10 million to the Plaintiffs. After receiving the results of their economist's report, the Plaintiffs filed this lawsuit on November 21, 2018, amending their complaint on March 19, 2019, to assert five claims against MPC and three members of the Commission in their official capacities. The Plaintiffs asserted claims under state law, as well as § 1983 claims under the Due Process Clause and Takings Clause, based on the underpayment of refunds.

In two separate orders, the district court dismissed the claims against the Commissioners and MPC, determining that sovereign immunity barred the Plaintiffs' claims against the Commissioners in their official capacities, and that the claims against MPC were time-barred under Mississippi law. On appeal, we affirmed the dismissal of the claims against the Commissioners but remanded the claims against MPC to the district court, finding that it had applied the incorrect accrual date for the statute of limitations. *Turnage v. Britton*, 29 F.4th 232, 237-38 (5th Cir. 2022). When we remanded the case to the district court, we did note:

> It may be, however, that the district court need not reach the limitations issue. Mississippi Power raised two additional arguments for dismissal: first, that it is not a state actor subject

to suit under section 1983, and second, that the ratepayers do not have a property interest in the refund protected by the Due Process Clause . . . [T]he district court should consider those issues in the first instance.

*Id.* at 246 n.11.

On remand, the district court did not address the accrual issue, but instead granted the Defendant's Motion to Dismiss for two separate and independently sufficient reasons: (1) MPC is not a state actor subject to suit under § 1983, and (2) the ratepayers do not have a property interest in the refund protected by the Due Process Clause.

## II.  Legal Standard

We review a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo and we apply the same legal standards as the district court. *Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). We must view properly pleaded facts in the light most favorable to the nonmoving party and dismiss only if the plaintiff failed to allege a facially plausible claim for relief. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012).

## III.  Analysis

As the district court correctly found, the Plaintiffs failed to plead the necessary facts to demonstrate that MPC is a state actor for § 1983 purposes. "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (quoting 42 U.S.C. § 1983). For a plaintiff to successfully state a cause of action under § 1983 against a private defendant like MPC, "the conduct of

the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001). The United States Supreme Court has utilized numerous tests[1] to determine whether the conduct of a private actor can be fairly attributed to the state, two of which the Plaintiffs raise: the state compulsion test and the nexus test. We address both in turn.

### A. Compulsion Test

Under the compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

The Plaintiffs allege that "MPC's use of the WACC was compelled by the Commission's July 2015 order" thus "there is little question . . . that MPC's conduct was the result of the Commission's compulsion or 'significant encouragement.'" But this bare allegation is insufficient to demonstrate state action. As the Supreme Court found in *Jackson v. Metropolitan Edison Co.*, "the nature of governmental regulation of private utilities is such that a utility may frequently be required by the state regulatory scheme to obtain approval . . . ." 419 U.S. 345, 357 (1974). A state utility commission's approval "does not transmute a practice initiated by the utility and approved by the commission into 'state action.'" *Id.* The facts

_____

[1] The Supreme Court has not determined "whether these different tests are actually different in operation or simply different ways of characterizing [this] necessarily fact-bound inquiry." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). We find no occasion to weigh in on the issue here.

pleaded by the Plaintiffs merely demonstrate that the Commission approved the incorrect utility rate, not that it compelled MPC to do so.

### B.  *The Nexus or Joint Action Test*

Similarly, the nexus test, or joint action test, finds that a private actor's conduct amounts to state action if "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 351.

The Plaintiffs allege in their complaint that the pattern of illegal behavior described in the Mississippi Supreme Court case between MPC and the Commission demonstrates a sufficiently close nexus such that MPC can be held liable as a state actor. This fails to establish a nexus for at least two reasons.

First, the activities the Plaintiffs describe in their complaint, and the activities referred to in the Mississippi Supreme Court's decision, relate to the 2013 ratemaking proceedings. *See generally Miss. Pub. Serv. Comm'n*, 168 So. 3d at 905. But the alleged "joint action"—the Commission's order approving MPC's proposed "illegal" interest rate—did not occur until 2015, months *after* that decision was released. Thus, it is irrelevant to MPC's challenged action here.

Second, as the district court discussed, the Plaintiffs never pleaded any specific facts tending to show a prior agreement between MPC or the Commission that led to the enactment of a refund plan. Instead, they recite blanket allegations that MPC "acted in concert with [the Commision]" to deprive the Plaintiffs of the interest to which they were allegedly entitled. These mere "labels and conclusions" are insufficient to establish an entitlement to relief and defeat the Defendant's motion to dismiss. *See Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 545 (2007).

Moving beyond these bare allegations, the Plaintiffs' complaint "shows nothing more than that [MPC] was a heavily regulated, privately owned utility" which is insufficient to "make [their] conduct attributable to the State for the purposes of the Fourteenth Amendment." *Jackson*, 419 U.S. at 358. Because MPC's conduct is not state action, which is dispositive of this appeal, we have no need to decide whether the ratepayers had a property interest in a specific interest rate. *See id.* at 359.

## IV.  Conclusion

Because the district court properly granted the Defendant's motion to dismiss, we AFFIRM the district court's judgment.